# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,**
1101 K Street, N.W., Suite 201
Washington, D.C. 20005

                Plaintiff,

v.

**U.S. DEPARTMENT OF JUSTICE**,
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

**U.S. DEPARTMENT OF HOMELAND
SECURITY**,
245 Murray Lane, S.W.
Washington, D.C. 20528

                Defendants.

Case No. 1:20-cv-2553 _____

## Complaint for Injunctive and Declaratory Relief

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for injunctive,

declaratory, and other appropriate relief.  Plaintiff Citizens for Responsibility and Ethics in

Washington ("CREW") challenges the failure of the following agencies to respond to Plaintiff's

request for documents: the U.S. Department of Justice ("DOJ"), and its component agencies the

Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Drug Enforcement Agency

("DEA"), and the U.S. Marshals Service ("USMS"); and the U.S. Department of Homeland

Security ("DHS"), and its component agencies U.S. Customs and Border Protection ("CBP") and

U.S. Immigration and Customs Enforcement ("ICE").  Plaintiff requested records related the

actual or planned deployment of federal law enforcement in response to protests for racial justice across the country, in addition to policies that governed federal authorities' treatment of these protesters.

2.      On July 23, 2020, CREW submitted FOIA requests to DOJ, ATF, DEA, USMS, DHS, CBP and ICE.  To date, these agencies and components have provided no determination as to CREW's FOIA requests.

3.      Also on July 23, 2020, CREW sought expedition of its requests from DOJ's Office of Public Affairs and from DHS's Privacy Office.  DOJ and DHS granted CREW's expedition request.  CBP and ICE denied CREW's expedition request.  ATF, DEA, and USMS have not replied to CREW's expedition request.

4.      This case seeks declaratory relief that Defendants DOJ and DHS are in violation of the FOIA, 5 U.S.C. § 522(a)(3)(A), by refusing to provide CREW with all responsive, non-exempt documents and for refusing to grant CREW's expedited requests for records, and injunctive relief ordering Defendants to process and release to CREW as soon as practicable the requested records.

**Jurisdiction and Venue**

5.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

6.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

7.      Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code.  CREW is committed to protecting the rights of citizens

2

to be informed about the activities of government officials and agencies and to ensuring the integrity of government officials and agencies.  CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions.  To advance its mission, CREW uses a combination of research, litigation, and advocacy.  As part of its research, CREW uses government records made available to it under the FOIA.

8.     Defendant DOJ is an agency within the meaning of 5 U.S.C. § 552(f)(1).  DOJ and its components ATF, DEA, and USMS have possession and control of the requested records and are responsible for fulfilling Plaintiff's FOIA requests.

9.     Defendant DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1).  DHS and its components CBP and ICE have possession and control of the requested records and are responsible for fulfilling Plaintiff's FOIA requests.

### Statutory and Regulatory Background

10.     The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

11.     An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head.  5 U.S.C. § 552(a)(6)(A)(i).

12.     An agency's failure to make this determination within 20 days is subject to judicial review without exhausting administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

13.     In "unusual circumstances" an agency may extend the time to respond to a request by no more than 10 working days, provided that the agency gives the requester written notice

setting forth the unusual circumstances and the date on which the agency expects to make a

determination.  5 U.S.C. § 552(a)(6)(B)(i)-(iii).  The FOIA defines "unusual circumstances" as

including the need to search for and collect responsive records from offices other than the office

processing the request; the need to search for, collect, and examine a "voluminous amount of

separate and distinct records"; and the need to consult with another agency.  *Id.*

§ 552(a)(6)(B)(iii)(I)-(III).

14.     The FOIA also requires agencies to promulgate regulations that provide for

expedited processing of FOIA requests where the requester demonstrates a "compelling need" as

well as "other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E)(i).  The FOIA defines

"compelling need" to include requests "made by a person primarily engaged in disseminating

information" where there is an "urgency to inform the public concerning actual or alleged

Federal Government activity."  *Id.* § 552(a)(6)(E)(v)(II).

15.     DOJ's FOIA regulations permit expedition for, among other things, "[a] matter of

widespread and exceptional media interest in which there exist possible questions about the

government's integrity that affect public confidence."  28 C.F.R. § 16.5(e)(l)(iv).  Requesters

seeking expedition under this subsection must submit their expedition request to DOJ's Director

of Public Affairs.  *Id.* § 16.5(e)(2).

16.     DHS's FOIA regulations similarly permit expedition for, among other things, "[a]

matter of widespread and exceptional media interest in which there exist possible questions

about the government's integrity which affect public confidence."  6 C.F.R. § 5.5(e)(1)(iv).

Requesters seeking expedition under this subsection must submit their expedition request to

DHS's Senior Director of FOIA Operations, Privacy Office.  *Id.* § 5.5(e)(2).

17.     Agencies are required to make a determination on a request for expedition within 10 calendar days "after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I).  DOJ and DHS regulations mirror this requirement.  *See* 28 C.F.R. § 16.5(e)(4) (DOJ); 6 C.F.R. § 5.5(e)(4) (DHS).

18.     An agency's denial of a request for expedition or an agency's failure to respond within 10 calendar days to a request for expedition is subject to judicial review without exhausting administrative remedies.  5 U.S.C. § 552(a)(6)(E)(iii).

19.     Agency decisions to deny or affirm denial of a request for expedition are subject to judicial review "based on the record before the agency at the time of the determination."  5 U.S.C. § 552(a)(6)(E)(iii).

## Factual Background

20.     Since late May 2020, Portland, Oregon and other cities around the country have been the sites of anti-racism protests in response to the killing of George Floyd by police.[1]

21.     These protests drew the ire of President Trump, who has portrayed the protests— especially in cities led by elected officials from the Democratic Party—as attempts by the "Radical Left Democrats" to "destroy our Country [sic] as we know it."[2]  The President has claimed there is growing lawlessness and violence in this country, and described the protesters as "professional anarchists, violent mobs, arsonists, looters, criminals, rioters, Antifa, and others."[3]

---

[1] Derrick Bryson Taylor, *George Floyd Protests: A Timeline*, N.Y. TIMES (July 10, 2020), https://www.nytimes.com/article/george-floyd-protests-timeline.html.

[2] Donald J. Trump (@realDonaldTrump), TWITTER (July 19, 2020 12:56 P.M.), https://twitter.com/realDonaldTrump/status/1284894845614600194.

[3] *Statement by the President* (June 1, 2020), https://www.whitehouse.gov/briefings-statements/statement-by-the-president-39/.

22.     President Trump repeatedly threatened to use federal forces against the residents of U.S. cities to end peaceful protest.

23.     On June 26, 2020, President Trump announced via Tweet that he had issued an Executive Order on "Protecting American Monuments, Memorials, and Statues and Combating Recent Criminal Violence."[4]  The order directed federal law enforcement to target and fully prosecute the damage or destruction of federal, state, and local sites—including sites memorializing Confederate leaders and slave owners, among others.[5]  The Executive Order also threatened to withhold federal funding from local authorities that looked the other way during the destruction of these sites.[6]

24.     On July 1, 2020, in response to the President's executive order, Acting Secretary of Homeland Security Chad Wolf announced the establishment of a DHS task force purportedly meant to "coordinate Departmental law enforcement agency assets in protecting our nation's historic monuments, memorials, statues, and federal facilities."[7]  Acting Secretary Wolf stated that the task force would "conduct ongoing assessments of potential civil unrest or destruction

---

[4] Donald J. Trump (@realDonaldTrump), TWITTER (June 26, 2020 2:48 P.M.), https://twitter.com/realDonaldTrump/status/1276633518433538049; *Executive Order on Protecting American Monuments, Memorials, and Statues and Combating Recent Criminal Violence* (June 26, 2020), https://www.whitehouse.gov/presidential-actions/executive-order-protecting-american-monuments-memorials-statues-combating-recent-criminal-violence/.

[5] *Executive Order on Protecting American Monuments, Memorials, and Statues and Combating Recent Criminal Violence* (June 26, 2020), https://www.whitehouse.gov/presidential-actions/executive-order-protecting-american-monuments-memorials-statues-combating-recent-criminal-violence/.

[6] *Id.*

[7] Press Release, Dep't of Homeland Sec., *DHS Announces New Task Force To Protect American Monuments, Memorials, and Statutes* (July 1, 2020), https://www.dhs.gov/news/2020/07/01/dhs-announces-new-task-force-protect-american-monuments-memorials-and-statues.

and allocate resources to protect people and property"—a decision that could yield "potential surge activity" to major cities.[8]

25.     At the time, according to a federal Government Accountability Office report released in August 2020, Acting Secretary Wolf had not been—and still has not been—lawfully appointed to lead DHS.[9]

### Federal Agents Deploy to Portland

26.     Federal agents deployed to Portland, Oregon, on or around July 1, 2020.  State and local authorities did not request or consent to this deployment.[10]  Upon information and belief, the federal agents worked for agencies that comprise and report to Defendants, including ATF, DEA, USMS, CBP, and ICE.

27.     The Trump Administration justified these agents' deployment based on 40 U.S.C. § 1315, a federal statute that authorizes DHS to "protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government . . . and the persons on the property."[11]  Section 1315 allows DHS to designate employees to the Federal Protective Service

---

[8] *Id.*

[9] U.S. GOV'T ACCOUNTABILITY OFFICE, B-331650, Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security (2020), https://www.gao.gov/products/B-331650.

[10] Everton Bailey Jr., *Portland Bans Police from Working with Federal Law Enforcement, Targeting Journalists and Legal Observers During Protests*, OREGONIAN (July 22, 2020), https://www.oregonlive.com/portland/2020/07/portland-bans-police-from-working-with-federal-law-enforcement-targeting-journalists-and-legal-observers-during-protests.html.

[11] *See, e.g.*, *Press Briefing by Press Secretary Kayleigh McEnany* (July 24, 2020), https://www.whitehouse.gov/briefings-statements/press-briefing-press-secretary-kayleigh-mcenany-072420/; *Myth vs. Fact: 50+ Nights of Violence, Chaos, and Anarchy in Portland, Oregon*, DEP'T OF HOMELAND SEC. (July 27, 2020), https://www.dhs.gov/news/2020/07/27/myth-vs-fact-50-nights-violence-chaos-and-anarchy-portland-oregon.

("FPS") for this purpose.  Such designation authority resides in the *lawfully appointed* Secretary of Homeland Security.[12]  Upon information and belief, Acting Secretary Wolf designated agents from CBP and ICE to FPS for deployment to Portland.[13]

28.     In the weeks since the deployment, it has become increasingly clear that the deployed federal agents were engaged in far more than "protecting our nation's historic monuments, memorials, statues, and federal facilities," as Acting Secretary Wolf had promised in announcing the DHS task force.[14]

29.     For example, on July 18, 2020, federal agents outside of Portland's federal courthouse were filmed repeatedly striking Navy veteran Christopher David—who approached the police line unarmed and with no apparent malice—with batons and mace.[15]

30.     In other incidents, roving federal officers outfitted in fatigues and carrying rifles, but wearing no visible agency identification, were filmed pulling protesters into unmarked minivans.[16]  On August 19, 2020, Portland media reported that USMS had flown a small aircraft over downtown Portland in order to photograph protesters below.[17]

---

[12] *See* 40 U.S.C. § 1315(b)(1).

[13] *See Statement on CBP Response in Portland, Oregon*, U.S. CUSTOMS & BORDER PROTECTION (July 17, 2020), https://www.cbp.gov/newsroom/speeches-and-statements/statement-cbp-response-portland-oregon; Betsy Woodruff Swan, Natasha Bertrand & Daniel Lippman, *Trump Administration Weighs a Show of Force in More Cities*, POLITICO (July 21, 2020), https://www.politico.com/news/2020/07/21/trump-federal-force-cities-377273.

[14] Bailey, *supra* note 10.

[15] John Ismay, *A Navy Veteran Had A Question for the Feds in Portland.  They Beat Him in Response*, N.Y. TIMES (July 20, 2020), https://nyti.ms/3fSHrtt.

[16] Katie Shepherd & Mark Berman, *'It Was Like Being Preyed Upon': Portland Protesters Say Federal Officers in Unmarked Vans Are Detaining Them*, WASH. POST (July 17, 2020), https://wapo.st/2WMiw39.

[17] Kyle Iboshi, *Feds Confirm Mysterious Plane Flying Circles over Portland Protesters Was U.S. Marshals Service*, KGW8 (Aug. 19, 2020), https://bit.ly/2FlSluu.

31.     These federal policing tactics, which were opposed by Oregon state and local officials, have raised serious constitutional concerns.  On July 16, 2020, Senator Jeff Merkley commented that "authoritarian governments, not democratic republics, send unmarked authorities after protesters."[18]

32.     On July 17, the U.S. Attorney for the District of Oregon formally requested an investigation into reports of DHS agents detaining Portland protesters without probable cause, and Oregon's Congressional representatives announced that they would be requesting DHS and DOJ investigations into the "unrequested presence and violent actions of federal forces in Portland."[19]  On the same day, the State of Oregon sued DHS, CBP, USMS, and FPS in the District Court for the District of Oregon seeking a declaration that the federal agents' actions violate the First, Fourth, and Fifth Amendment rights of the protesters, along with an injunction to enjoin federal authorities from "unlawfully detaining Oregonians."[20]  Several other lawsuits—

---

[18] Amir Vera, Konstantin Toropin & Josh Campbell, *US Attorney Requests DHS Investigation After Video Shows Masked, Camouflaged Federal Authorities Arresting Protesters in Portland*, CNN (July 20, 2020), https://cnn.it/2Ct6y7L.

[19] Jacob Knutson, *U.S. Attorney Calls for Investigation into Federal Officers Arresting Protesters*, AXIOS (July 18, 2020), https://www.axios.com/portland-federal-officers-protests-trump-5b37069b-3c92-4f57-81b3-10af795d2628.html; Press Release, Senator Jeff Merkley, *Merkley, Wyden, Blumenauer, Bonamici Call for Investigations into Federal Operatives in Portland* (July 17, 2020), https://www.merkley.senate.gov/news/press-releases/merkley-wyden-blumenauer-bonamici-call-for-investigations-into-federal-operatives-in-portland-2020.

[20] Press Release, Oregon Dep't of Justice, *Attorney General Rosenblum Files Lawsuit Against U. S. Homeland Security; Announces Criminal Investigation* (July 17, 2020), https://bit.ly/3bLhZop; Complaint at 1, 8-9, *Rosenblum v. John Does 1-10*, No. 3:20-cv-01161-MO (D. Or. July 17, 2020), ECF No. 1.

filed by Portland protesters, protest medics, and journalists—allege that federal agents engaged in unlawful and unconstitutional conduct.[21]

33.     And on July 22, the Portland City Council passed a resolution banning local law enforcement from coordinating with federal officers, citing "an unprecedented and unconstitutional abuse of power by the federal government."[22]

34.     A week later, on July 29, Oregon Governor Kate Brown announced that, after negotiations with Vice President Mike Pence and others in the Trump Administration, the federal government had agreed to a phased withdrawal of agents from the federal courthouse in Portland.  In her statement on the withdrawal, Governor Brown emphasized: "These federal officers have acted as an occupying force, refused accountability, and brought violence and strife to our community."[23]

35.     On August 17, Governor Brown's office released emails in response to a public records request that demonstrated the flurry of activity that led to this withdrawal announcement.[24]  The communications reveal that on July 14, 2020, Acting Secretary Wolf scheduled a phone call with Governor Brown to discuss the civil unrest in Portland.[25]  The

---

[21] *See, e.g.*, Complaint, *Don't Shoot Portland v. Wolf*, No. 1:20-cv-02040-CRC (D.D.C. July 27, 2020), ECF No. 1; Complaint, *Wise v. City of Portland*, No. 3:20-cv-01193-IM (D. Or. July 22, 2020), ECF No. 1; Second Amended Complaint, *Index Newspapers LLC v. City of Portland*, No. 3:20-cv-01035-SI (D. Or. July 17, 2020), ECF No. 53.

[22] Bailey, *supra* note 10.

[23] Amanda Butt, *Federal Officers Will Begin Withdrawing from Portland, Gov. Brown Says*, KATU2 (July 29, 2020), https://katu.com/news/local/federal-officers-will-begin-withdrawing-from-portland-gov-brown-says.

[24] Steve Benham, *Emails Detail Agreement Governor, DHS Reached over Feds Withdrawal from Portland*, KATU2 (Aug. 17, 2020), https://katu.com/news/local/emails-outline-negotiation-chad-wolf-kate-brown-timeline-conditions-of-federal-withdrawal-from-portland.

[25] *Id.*

communications also reveal coordination between various federal officials and representatives of the Oregon state government to facilitate an agreement on the eventual federal withdrawal.[26] The parties ultimately appear to have agreed that federal agents would police inside the federal courthouse and inside the fence surrounding the courthouse, but not on the adjacent streets and parks or beyond.[27]

### Operation LeGend and Federal Agents in Other U.S. Cities

36.     Portland has not been the only target of the surge of federal law enforcement.  On July 8, 2020, Attorney General William Barr announced the launch of Operation LeGend, a federal policing initiative that he claimed would target a sudden increase in violent crime in U.S. cities.[28]  According to the announcement, Operation LeGend would begin in Kansas City, Missouri, given the increase in the city's homicide rate.[29]

37.     However, President Trump repeatedly threatened to expand the federal deployment to additional cities.  For example, on July 15, President Trump spoke about violent crime, asserting that certain cities "are out of control; they're like warzones.  And if the cities are going to straighten it out, if local politicians, or in this case — I don't say this for political reasons — they're all Democrats.  They're liberal, left-wing Democrats.  And it's almost like they think this is going to be this way forever, where in Chicago, 68 people were shot and 18 died last week.  We're not going to put up with that.  We're not going to put up with that."[30]

---

[26] *Id.*

[27] *Id.*

[28] Press Release, Dep't of Justice, *Attorney General William P. Barr Announces Launch of Operation Legend* (July 8, 2020), https://bit.ly/2RgWdj4.

[29] *Id.*

[30] *Remarks by President Trump in Briefing on Keeping American Communities Safe: The Takedown of Key MS-13 Criminal Leaders* (July 15, 2020), https://bit.ly/3hhGmLx.

38.     On July 20, 2020 the President told reporters, "I'm going to do something—that, I can tell you," because "we're not going to let New York and Chicago and Philadelphia and Detroit and Baltimore and all of these—Oakland is a mess."[31]

39.     As threatened, on July 22, 2020, President Trump, Attorney General Barr, and Acting Secretary Wolf jointly announced an expansion of Operation LeGend to Chicago, Illinois and Albuquerque, New Mexico.[32]  Then, on July 29, Attorney General Barr announced that Operation LeGend had expanded to include the deployment of armed federal agents to Cleveland, Ohio; Detroit, Michigan; and Milwaukee, Wisconsin.[33]  Since then, St. Louis, Missouri; Memphis, Tennessee; and Indianapolis, Indiana have been added to the Operation.[34]

40.     In a statement on Operation LeGend, Attorney General Barr characterized the deployment of federal officers as "classic crime fighting," rather than "tactical teams we use to defend against riots and mob violence."[35]  At the same press conference, the President asserted that "the job of policing a neighborhood falls on the shoulders of local elected leadership," and

---

[31] Peter Baker, Zolan Kanno-Youngs & Monica Davey, *Trump Threatens to Send Federal Law Enforcement Forces to More Cities*, N.Y. TIMES (July 20, 2020), https://nyti.ms/3hoygBj.

[32] *Remarks by President Trump on Operation LeGend: Combatting Violent Crime in American Cities* (July 22, 2020), https://bit.ly/3hnTXRU.

[33] Press Release, Dep't of Justice, *Operation Legend Expanded to Cleveland, Detroit, and Milwaukee* (July 29, 2020), https://www.justice.gov/opa/pr/operation-legend-expanded-cleveland-detroit-and-milwaukee.

[34] Press Release, Dep't of Justice, *Operation Legend Expanded to Memphis and St. Louis* (Aug. 6, 2020), https://www.justice.gov/opa/pr/operation-legend-expanded-memphis-and-st-louis; Press Release, Dep't of Justice, *Operation Legend Expanded to Indianapolis* (Aug. 14, 2020), https://www.justice.gov/opa/pr/operation-legend-expanded-indianapolis.

[35] *Remarks by President Trump on Operation LeGend: Combatting Violent Crime in American Cities* (July 22, 2020), https://bit.ly/3hnTXRU.

he accused local elected leaders of "abdicat[ing] their duty" and of "absolute insanity."[36]  He added that "we will use federal law enforcement to vigorously charge federal crimes."[37]

*Future Deployment in Portland and in Other U.S. Cities*

41.     Recently, Trump Administration officials have made it clear that federal agents may be deployed back to Portland.  For example, on August 19, 2020, White House Chief of Staff Mark Meadows commented on the anti-racism protests in Portland: "Well, it's anti-American . . .  And this president—I traveled with him yesterday to Arizona as you know.  Not only once, but a dozen times he says: 'We've gotta do something about it.  We send in the FBI.'"[38]

42.     The President has struck a similar tone, Tweeting on August 10, 2020: "Portland, which is out of control, should finally, after almost 3 months, bring in the National Guard.  The Mayor and Governor are putting people's lives at risk.  They will be held responsible.  The Guard is ready to act immediately.  The Courthouse is secured by Homeland!"[39]

43.     As protests erupt in response to police violence against other Black citizens, the Trump Administration has responded by again sending in federal agents.  In late August 2020, protests exploded in Kenosha, Wisconsin in response to the maiming of Jacob Blake, who was shot in the back by police as he was getting into his car.[40]  President Trump responded with a

---

[36] *Id.*

[37] *Id.*

[38] Jason Lemon, *Trump's Chief of Staff Says Federal Agents Will Have to Be Sent Back to Portland*, NEWSWEEK (Aug. 19, 2020), https://www.newsweek.com/trumps-chief-staff-says-federal-agents-will-have-sent-back-portland-1526167.

[39] Donald J. Trump (@realDonaldTrump), TWITTER (Aug. 10, 2020, 10:55 A.M.), https://twitter.com/realDonaldTrump/status/1292837084152107010.

[40] Nicole Chavez, Christina Maxouris & Eric Levenson, *Federal Investigators Launch a Civil Rights Probe into Shooting of Jacob Blake*, CNN (Aug. 26, 2020), https://cnn.it/33kaIYO.

series of Tweets, capitalizing on the same "LAW and ORDER" themes and announcing that federal agents would be deployed to the Kenosha community.[41]  In the same Tweet thread, President Trump also noted his desire to reinstall federal troops in Portland: "Portland should do the same!"[42]

*CREW's FOIA Request to DOJ*

44.     On July 23, 2020, CREW sent a FOIA request by email to DOJ requesting "all documents and communications from June 2, 2020 to the present that explain or pertain to: (1) The decision to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Portland, Oregon and Chicago, Illinois; (2) Any decisions or plans to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Albuquerque, New Mexico; Baltimore, Maryland; Detroit, Michigan; Kansas City, Missouri; New York City; Oakland, California; and Philadelphia, Pennsylvania; and (3) Any policies to which law enforcement officers under the auspices of DOJ are bound governing the treatment of protesters in the above-mentioned cities." (**Exhibit A**).

45.     CREW sought a waiver of fees associated with processing its request.  In support, CREW explained that the requested records are likely to contribute to public understanding of how the federal government justified—and may continue to justify—sending militarized federal agents into American cities, often against the wishes of the local governments in these jurisdictions.

---

[41] Donald J. Trump (@realDonaldTrump), TWITTER (Aug. 26, 2020, 1:19 P.M.), https://twitter.com/realDonaldTrump/status/1298671449968959490.

[42] *Id.*

46.     CREW also sought expedition for its request from DOJ's Office of Public Affairs because the request's subject matter is of widespread and exceptional media interest and because the requested information involves possible questions of the government's integrity that affect public confidence.  (**Exhibit B**).  As CREW explained, print, television, online, and other media have been filled with shocking images of violent and potentially unconstitutional federal agents' interactions with protesters.  The records that Plaintiff has requested will shed light on the factors that DOJ considered in deciding to send these federal law enforcement authorities into American cities, at times against the wishes of local and state authorities.  The American public has the right to understand this decision-making.

47.     On July 31, 2020, DOJ's Office of Information Policy ("OIP") acknowledged receipt of CREW's FOIA request and informed CREW that its request for expedition had been granted.  (**Exhibit C**).  However, DOJ also took the position that because the requested records "require a search in and/or consultation with another Office," they fall under "unusual circumstances."  *See* 5 U.S.C. § 552 (a)(6)(B)(i)-(iii).  DOJ explained that it had not completed any searches to determine whether the agency has records within the scope of the request.

48.     Also on July 31, 2020, OIP emailed CREW, asking from which DOJ Offices Plaintiff requests records.  (**Exhibit D**).  Plaintiff replied on the same day, explaining that CREW seeks records from the following DOJ Offices: Attorney General, Deputy Attorney General, Associate Attorney General, and Public Affairs.

49.     To date, CREW has received no other communications from DOJ regarding the DOJ FOIA request.

*CREW's FOIA Request to ATF*

50.     On July 23, 2020, CREW sent a FOIA request by email to ATF requesting "all documents and communications from June 2, 2020 to the present that explain or pertain to: (1) The decision to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Portland, Oregon and Chicago, Illinois; (2) Any decisions or plans to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Albuquerque, New Mexico; Baltimore, Maryland; Detroit, Michigan; Kansas City, Missouri; New York City; Oakland, California; and Philadelphia, Pennsylvania; and (3) Any policies to which law enforcement officers under the auspices of ATF are bound governing the treatment of protesters in the above-mentioned cities." (**Exhibit E**).

51.     CREW sought a waiver of fees associated with the request based on the same rationale as the DOJ fee waiver request.  CREW also sought expedition of its ATF FOIA request from DOJ's Office of Public Affairs in the same request and on the same grounds as the DOJ FOIA request.  (**Exhibit B**).

52.     By email dated July 30, ATF acknowledged CREW's request and granted the fee waiver.  (**Exhibit F**).

53.     To date, CREW has received no other communications from ATF regarding the ATF FOIA request.

*CREW's FOIA Request to DEA*

54.     On July 23, 2020, CREW sent a FOIA request by email to DEA requesting "all documents and communications from June 2, 2020 to the present that explain or pertain to: (1) The decision to deploy federal law enforcement agents, officers, or other personnel in response

to the ongoing protests over racial justice in Portland, Oregon and Chicago, Illinois; (2) Any decisions or plans to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Albuquerque, New Mexico; Baltimore, Maryland; Detroit, Michigan; Kansas City, Missouri; New York City; Oakland, California; and Philadelphia, Pennsylvania; and (3) Any policies to which law enforcement officers under the auspices of DEA are bound governing the treatment of protesters in the above-mentioned cities." (**Exhibit G**).

55.     CREW sought a waiver of fees associated with the request based on the same rationale as the DOJ fee waiver request.  CREW also sought expedition of its DEA FOIA request from DOJ's Office of Public Affairs in the same request and on the same grounds as the DOJ FOIA request.  (**Exhibit B**).

56.     By letter dated July 28, 2020, DEA acknowledged Plaintiff's FOIA request. (**Exhibit H**).  DEA granted CREW's fee waiver request and explained that it had directed the expedition request to DOJ's Office of Public Affairs, but DEA did not indicate whether the request had been granted or denied.

57.     In the same letter, DEA also explained that the records sought fall within "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B)(i)-(iii).  Under this rationale, DEA explained that it was "extending the time limit to respond to your request beyond the ten additional days provided by the statute."  DEA noted that the request had been assigned to the "complex" track, but that it had not completed a search to determine whether the agency has any records in the scope of the FOIA request.

58.     To date, CREW has received no other communications from DEA regarding the DEA FOIA request.

*CREW's FOIA Request to USMS*

59.    On July 23, 2020, CREW sent a FOIA request by email to USMS requesting "all documents and communications from June 2, 2020 to the present that explain or pertain to: (1) The decision to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Portland, Oregon and Chicago, Illinois; (2) Any decisions or plans to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Albuquerque, New Mexico; Baltimore, Maryland; Detroit, Michigan; Kansas City, Missouri; New York City; Oakland, California; and Philadelphia, Pennsylvania; and (3) Any policies to which law enforcement officers under the auspices of USMS are bound governing the treatment of protesters in the above-mentioned cities." (**Exhibit I**).

60.    CREW sought a waiver of fees associated with the request based on the same rationale as the DOJ waiver request.  CREW also sought expedition of its USMS FOIA request from DOJ's Office of Public Affairs in the same request and on the same grounds as the DOJ FOIA request.  (**Exhibit B**).

61.    To date, CREW has received no communications from USMS regarding the USMS FOIA request.

*CREW's FOIA Request to DHS*

62.    On July 23, 2020, CREW sent a FOIA request by email to DHS requesting "all documents and communications from June 2, 2020 to the present that explain or pertain to: (1) The decision to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Portland, Oregon and Chicago, Illinois; (2) Any decisions or plans to deploy federal law enforcement agents, officers, or other personnel in

response to the ongoing protests over racial justice in Albuquerque, New Mexico; Baltimore,

Maryland; Detroit, Michigan; Kansas City, Missouri; New York City; Oakland, California; and

Philadelphia, Pennsylvania; (3) Any communications with local elected leaders in Oregon,

including but not limited to the Oregon Governor's office, Attorney General's office, or office of

the Mayor of Portland, related to the deployment of federal law enforcement agents, officers, or

other personnel in response to the ongoing protests; and (4) Any policies to which law

enforcement officers under the auspices of the DHS are bound." (**Exhibit J**).

63.     CREW sought waiver of fees associated with processing its request.  In support,

CREW explained that the requested records are likely to contribute to public understanding of

how the federal government justified—and may continue to justify—sending militarized federal

agents into American cities, often against the wishes of the local governments in these

jurisdictions.

64.     CREW also sought expedition for its request from DHS's Privacy Office because

the request's subject matter is of widespread and exceptional media interest and because the

requested information involves possible questions of the government's integrity that affect public

confidence.  (**Exhibit K**).  As CREW explained, print, television, online, and other media have

been filled with shocking images of violent and potentially unconstitutional federal agents'

interactions with protesters.  The records that Plaintiff has requested will shed light on the factors

that DHS considered in deciding to send these federal law enforcement authorities into American

cities, at times against the wishes of local and state authorities.  The American public has the

right to understand this decision-making.  As has since become clear, a key part of that decision-

making is whether Acting Secretary Wolf ordered the deployment and whether he had lawful

authority to do so.

65.     On July 31, 2020, DHS sent a reply by email, acknowledging receipt of the FOIA request.  (**Exhibit L**).  The agency "conditionally grant[ed]" the request for a fee waiver, depending upon DHS review of a sampling of responsive records.

66.     DHS also granted CREW's request for expedition and noted that it had "queried the appropriate component(s) of DHS for responsive records."  However, DHS also explained that there may be delay in processing the request, "[d]ue to the increasing number of FOIA requests received by this office."  DHS also explained that the because the request "seeks documents that will require a thorough and wide-ranging search," the agency will "invoke a 10-day extension for [the] request pursuant to 6 C.F.R. Part 5 § 5.5(c)."

67.     To date, CREW has received no other communications from DHS regarding the DHS FOIA request.

*CREW's FOIA Request to CBP*

68.     On July 23, 2020, CREW sent a FOIA request by email to CBP requesting "all documents and communications from June 2, 2020 to the present that explain or pertain to: (1) The decision to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Portland, Oregon and Chicago, Illinois; (2) Any decisions or plans to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Albuquerque, New Mexico; Baltimore, Maryland; Detroit, Michigan; Kansas City, Missouri; New York City; Oakland, California; and Philadelphia, Pennsylvania; and (3) Any policies to which law enforcement officers under the auspices of CBP are bound governing the treatment of protesters in the above-mentioned cities." (**Exhibit M**).

69.     CREW sought a waiver of fees associated with the request based on the same rationale as the DHS fee waiver request.  CREW also sought expedition of its CBP FOIA request from the DHS Privacy Office in the same request and on the same grounds as the DHS FOIA request.  (**Exhibit K**).

70.     On July 29, 2020, CBP emailed Plaintiff with an acknowledgment of the FOIA request.  (**Exhibit N**).  CBP did not acknowledge CREW's fee waiver request and explained that it would be charging for records as outlined on its website.  CBP's email also failed to acknowledge CREW's request for expedition.  Instead, the agency noted: "Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request."

71.     On August 7, 2020, CBP emailed CREW, noting that "[t]he time frame of interest is very clear and reasonable," but asking, "[i]n order to greatly reduce processing time and to avoid an undue burden on the agency," that CREW provide: (1) specific names of individuals of interest; (2) if unable to provide names, email domains (i.e., "eop.gov") for each portion of the request; and (3) key words of specific interest.  The agency noted that, as of the date of the communication, the request was "on hold."  (**Exhibit O**).

72.     That same day, on August 7, 2020, CREW replied via email.  (**Exhibit P**).  Plaintiff asserted that the level of specificity provided in the initial FOIA request was "within the parameters of a perfected request as it allows [the] office to conduct a name search for communications to or from the identified individuals, regarding the specified subject matter, sent during the specified time period."  Despite this, Plaintiff acknowledged that it would be "happy to work with [CBP] to narrow the scope of [the FOIA] request."

21

73.    In response to CBP's question about the "specific names of individuals of interest," CREW provided the following names.

a.   From the White House and Executive Office of the President, Plaintiff provided the following names: Donald J. Trump, Michael R. Pence, Chief of Staff Mark Meadows, Pasquale Anthony Cipollone, Homeland Security Advisor Julia Nesheiwat, Chief of Staff to the Vice President Marc Short, National Security Advisor Robert O'Brien, United States Domestic Policy Council Acting Director Brooke Leslie Rollins.

b.   From DHS, Plaintiff provided the following as a non-exhaustive list of individuals of interest: Chad F. Wolf, Ken Cuccinelli, Chief of Staff John Gountanis, Executive Secretary Clark Borrow, Acting General Counsel Chad Mizelle, Military Advisor Rear Adm. Brenan C. McPherson, Acting Under Secretary Joseph B. Maher, Acting Under Secretary Scott Glabe, Deputy Under Secretary James W. McCament, Assistant Secretary Sarah Rehberg, Assistant Secretary Meghann Peterlin, TSA Administrator David P. Pekoske, Assistant Secretary Beth Spivey, Deputy Assistant Secretary Joseph Kasper, Deputy Assistant Secretary Aaron L. Calkins, Assistant Secretary John H. Hill, Deputy Assistant Secretary Brian Dorow, Deputy Assistant Secretary Cherie N. Short, Acting Executive Director Mike Miron, Acting Assistant Director Alexei Woltornist, Acting Deputy Assistant Secretary Sofia Boza-Holman, Deputy Assistant Secretary Melika Willoughby McKinnis, Director Christopher J. Tomney, Officer for Civil Rights & Civil Liberties Patricia Nation, Inspector General Joseph V. Cuffari.

c.   From CBP, Plaintiff provided the following as a non-exhaustive list of individuals of interest: Mark A. Morgan, Deputy Commissioner Robert E. Perez, Assistant Commissioner James Collins, Chief Counsel Scott K. Falk, Executive Director Tim Quinn, Executive Director Rebekah A. Salazar, Executive Assistant Commissioner Edward E. Young, Executive Assistant

Commissioner Todd C. Owen, Chief Rodney S. Scott, Executive Assistant Commissioner
William A. Ferrara.

     d.   From FPS, Plaintiff provided the following as a non-exhaustive list of individuals
of interest: Director L. Eric Patterson.

     e.   From ICE, Plaintiff provided the following as a non-exhaustive list of individuals
of interest: Acting Director Matthew T. Albence, Acting Deputy Director Derek N. Benner,
Chief of Staff Kathy Neubel Kovarik, Executive Associate Director Henry Lucero, Principal
Legal Advisor Tony H. Pham, Acting Executive Associate Director Alysa D. Erichs, Associate
Director Waldemar Rodriguez.

     f.   From DOJ, Plaintiff provided the following as a non-exhaustive list of individuals
of interest: Attorney General William Barr, Deputy Attorney General Jeffrey A. Rosen, Solicitor
General Noel Francisco, Principal Deputy Associate Attorney General Clair McCusker Murray,
Assistant Attorney General Steven A. Engel, Assistant Attorney General Beth A. Williams,
Director Kerri Kupec, U.S. Attorney Billy J. Williams, Assistant Attorney General for National
Security John C. Demers, Inspector General Michael E. Horowitz, Assistant Attorney General
Eric S. Dreiband, COPS Director Phil Keith, EOUSA Director Corey Ellis.

     g.   From ATF, Plaintiff provided the following as a non-exhaustive list of individuals
of interest: Acting Director Regina Lombardo, Associate Deputy Director Marvin Richardson.

     h.   From DEA, Plaintiff provided the following as a non-exhaustive list of
individuals of interest: Acting Administrator Timothy J. Shea, Principal Deputy Administrator
Preston L. Grubbs.

     i.   From USMS, Plaintiff provided the following as a non-exhaustive list of
individuals of interest: Director Donald W. Washington, Acting Deputy Director Derrick

Driscoll, Chief of Staff J. Kilgallon, Acting Chief D. Farrell, Assistant Director A. Smith, Associate Director J. Tyler, Associate Director R. Robinson, General Counsel Gerald M. Auerbach, Ethics Office Robert Marcovici, Office of Congressional and Public Affairs Chief W. Delaney.

74.     In response to CBP's question about the "email domains for each portion of the request," CREW provided the following email domains of interest: *.eop.gov, dhs.gov, oig.dhs.gov, cbp.dhs.gov, *.usdoj.gov, *.ice.gov, *.dea.gov.

75.     And in response to CBP's question about the "key words of specific interest," Plaintiff provided the following key words: "Portland," "Oregon," "Seattle," "Washington," "Chicago," "Illinois," "Albuquerque," "New Mexico," "Baltimore," "Maryland," "Kansas City," "Missouri," "Oakland," "California," "New York City," "New York," "Detroit," "Michigan," "Philadelphia," "Pennsylvania," "Lightfoot," "Wheeler," "Kate Brown," "Duran," "Inslee," "Cuomo," "Hogan," "Bernard Young," "Whitmer," "Duggan," "Parson," "Quinton Lucas," "Keller," "Grisham," "state government," "state police," "governor." "EOP," "White House," "executive order," "DCPD-202000483," "Executive Order 13933," "Protecting American Communities Task Force," "Justice," "tactical," "CS," "tear gas," "riot," "laser," "crowd control," "protest," "unrest," "less lethal," "Gil," "Kerlokowske," "Marshals," "USMS," "Marshals," "FPS," "journalists," "media," "detention," "Hatfield," "cite and release," "LeGend," "First Amendment," "BLM," "ANTIFA," "domestic terrorism," "fusion center," "rapid deployment teams," "PPB," "Kenton Park," "Edith Green," "fencing," "Lownsdale Square," "Chapman Square," "Terry Schrunk Plaza," "BORTAC," "BORSTAR," "SOG," "field office," "law enforcement partnerships."

76.     On August 26, 2020, Plaintiff received an email from CBP, noting that CREW's request for expedited processing had been denied because it "[d]oes not meet requirements per DHS Regulations."  (**Exhibit Q**).

77.     In a separate email also dated August 26, 2020, CBP explained that CREW's fee waiver request "has been determined to be not applicable as the request is not billable."  (**Exhibit R**).

78.     To date, CREW has received no other communications from CBP regarding the CBP FOIA request.

*CREW's FOIA Request to ICE*

79.     On July 23, 2020, CREW sent a FOIA request by email to ICE requesting "all documents and communications from June 2, 2020 to the present that explain or pertain to: (1) The decision to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Portland, Oregon and Chicago, Illinois; (2) Any decisions or plans to deploy federal law enforcement agents, officers, or other personnel in response to the ongoing protests over racial justice in Albuquerque, New Mexico; Baltimore, Maryland; Detroit, Michigan; Kansas City, Missouri; New York City; Oakland, California; and Philadelphia, Pennsylvania; and (3) Any policies to which law enforcement officers under the auspices of ICE are bound governing the treatment of protesters in the above-mentioned cities." (**Exhibit S**).

80.     CREW sought a waiver of fees associated with the request based on the same rationale as the DHS fee waiver request.  CREW also sought expedition of its ICE FOIA request from the DHS Privacy Office in the same request and on the same grounds as the DHS FOIA request.  (**Exhibit K**).

81.     On July 24, 2020, ICE acknowledged receipt of the FOIA request via email.
(**Exhibit T**).  ICE did not acknowledge CREW's fee waiver request, instead explaining: "We
shall charge you for records in accordance with the DHS Interim FOIA regulations, as they apply
to media requesters."

82.     In the same email, ICE explained: "Due to the increasing number of FOIA
requests received by this office, we may encounter some delay in processing your request.  Per
Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests
according to their order of receipt.  Although ICE's goal is to respond within 20 business days of
receipt of your request, the FOIA does permit a 10- day extension of this time period…. ICE will
invoke a 10-day extension for your request."

83.     On July 24, 2020, Plaintiff sent a clarification email to ICE, explaining that
CREW had requested a fee waiver and had not agreed to pay any processing fees.  (**Exhibit U**).

84.     On July 28, 2020, ICE sent an email to CREW, granting the fee request.  (**Exhibit
V**).  However, ICE denied CREW's request for expedition on the grounds that CREW "[had] not
detailed with specificity why [it feels] there is an urgency to inform the public about the
information [it had] requested."  ICE also asserted: "[CREW] did not offer sufficient supporting
evidence of public interest that is any greater than the public's general interest in the information
you have requested.  [CREW's] letter was conclusory in nature and did not present any facts to
justify a grant of expedited processing under the applicable standards."

85.     To date, CREW has received no other communications from ICE regarding the
ICE FOIA request.

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE

### (DOJ's Wrongful Withholding of Agency Records)

86.     Plaintiff repeats and re-alleges the foregoing paragraphs.

87.     Plaintiff properly asked for records within the custody and control of DOJ and its component agencies ATF, DEA, and USMS.

88.     Defendant DOJ and its component agencies ATF, DEA, and USMS wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for making a determination on Plaintiff's request, and by withholding from disclosure records responsive to Plaintiff's request.  5 U.S.C. §§ 552(a)(6)(A)(i) and 552(a)(6)(B)(i).

89.     Defendant DOJ's failure to make a determination within the statutory time period is subject to judicial review without exhausting administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

90.     Plaintiff therefore is entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in CREW's FOIA requests of DOJ, ATF, DEA, and USMS.

### CLAIM TWO

### (DOJ's Failure to Grant Expedition)

91.     Plaintiff repeats and re-alleges the foregoing paragraphs.

92.     Plaintiff properly asked that DOJ expedite the processing of Plaintiff's FOIA requests to DOJ and its component agencies ATF, DEA, and USMS, based on CREW's showing of widespread and exceptional media interest in the requested information, which involves possible questions of the government's integrity that affect public confidence.

27

93.     Defendant DOJ did not grant expedition as to Plaintiff's ATF, DEA, and USMS FOIA requests, despite the factual and legal showing CREW made demonstrating entitlement to expedition.

94.     Plaintiff is not required to exhaust administrative remedies with respect to Defendant DOJ's refusal to grant CREW's requests for expedition.  An agency's denial of a request for expedition or an agency's failure to respond within 10 calendar days to a request for expedition is subject to judicial review without exhausting administrative remedies.  5 U.S.C. § 552(a)(6)(E)(iii).

95.     Plaintiff therefore is entitled to injunctive and declaratory relief with respect to the expedited processing and disclosure as soon as practicable of the request records.

## CLAIM THREE

### (DHS's Wrongful Withholding of Agency Records)

96.     Plaintiff repeats and re-alleges the foregoing paragraphs.

97.     Plaintiff properly asked for records within the custody and control of DHS and its component agencies CBP and ICE.

98.     Defendant DHS and its component agencies CBP and ICE wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for making a determination on Plaintiff's request, and by withholding from disclosure records responsive to Plaintiff's request.  5 U.S.C. §§ 552(a)(6)(A)(i) and 552(a)(6)(B)(i).

99.     Defendant DHS's failure to make a determination within the statutory time period is subject to judicial review without exhausting administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

100.    Plaintiff therefore is entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in CREW's FOIA requests to DHS, CBP, and ICE.

## CLAIM FOUR

### (DHS's Failure to Grant Expedition)

101.    Plaintiff repeats and re-alleges the foregoing paragraphs.

102.    Plaintiff properly asked that DHS expedite the processing of Plaintiff's FOIA requests to DHS, CBP, and ICE, based on CREW's showing of widespread and exceptional media interest in the requested information, which involves possible questions of the government's integrity that affect public confidence.

103.    Defendant DHS did not grant expedition as to Plaintiff's CBP and ICE FOIA requests, despite the factual and legal showing CREW made demonstrating entitlement to expedition.

104.    Plaintiff is not required to exhaust administrative remedies with respect to Defendant DHS's refusal to grant CREW's requests for expedition.  An agency's denial of a request for expedition or an agency's failure to respond within 10 calendar days to a request for expedition is subject to judicial review without exhausting administrative remedies.  5 U.S.C. § 552(a)(6)(E)(iii).

105.    Plaintiff therefore is entitled to injunctive and declaratory relief with respect to the expedited processing and disclosure as soon as practicable of the request records.

## REQUESTED RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

(1)     Order Defendants DOJ and DHS, and their components ATF, DEA, USMS, CBP, and ICE, to immediately and fully process Plaintiff's FOIA requests and disclose all non-exempt documents to Plaintiff;

(2)     Issue a declaration that Plaintiff is entitled to the expedited processing and disclosure of the requested records;

(3)     Provide for expeditious proceedings in this action;

(4)     Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(5)     Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(6)     Grant such other relief as the Court may deem just and proper.


Dated:  September 11, 2020                    Respectfully submitted,

                                              */s/ Ari Holtzblatt*
                                              Ari Holtzblatt
                                              (D.C. Bar. No. 1009913)
                                              Jessica A. Lutkenhaus
                                              (D.C. Bar No. 1046749)
                                              WILMER CUTLER PICKERING HALE AND DORR LLP
                                              1875 Pennsylvania Avenue NW
                                              Washington, D.C. 20006
                                              Phone: (202) 663-6000
                                              Facsimile: (202) 663-6363
                                              ari.holtzblatt@wilmerhale.com
                                              jessica.lutkenhaus@wilmerhale.com

                                              Kelsey Quigley
                                              (*pro hac vice* forthcoming)
                                              WILMER CUTLER PICKERING HALE AND DORR LLP
                                              950 Page Mill Road
                                              Palo Alto, CA 94304
                                              Phone: (650) 858-6000
                                              Facsimile: (650) 858-6100
                                              kelsey.quigley@wilmerhale.com

Nikhel S. Sus
(D.C. Bar No. 1017937)
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
1101 K St. NW, Suite 201
Washington, D.C. 20005
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org

*Counsel for Plaintiff*